**GIBBS & HILL, INC., Plaintiff,**

v.

**HARBERT INTERNATIONAL, INC., Defendant.**

**No. 90 Civ. 5576 (RWS).**

United States District Court, S.D. New York.

Sept. 29, 1990.

Nixon, Hargrave, Devans & Doyle (Frank H. Penski, of counsel), New York City, for plaintiff.

LeBoeuf, Lamb, Leiby & MacRae (Geoffry D.C. Best, Robert B. Elwood, of counsel), New York City, Bradley, Arant, Rose & White (Stanley D. Bynum, Michael D. McKibben, of counsel), Birmingham, Ala., for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Gibbs & Hill, Inc. ("Gibbs") has moved by order to show cause for a stay of defendant Harbert International, Inc. ("Harbert") from prosecuting an action commenced in the United States District Court for the Northern District of Alabama (the "Alabama Action"). The motion to stay is denied. The opposition to this motion has been considered a motion to transfer to Alabama and has been granted for the reasons set forth below.

### Prior Proceedings

By order to show cause dated September 12, the Gibbs motion was set for a hearing on September 18, 1990, the day before depositions were to take place. Between the filing of the order and the hearing on the stay, the Honorable Robert B. Propst in the Alabama Action stayed the depositions pending a resolution in open court in New York on the 18th. After hearing argument the opposition to this motion was treated as a motion to transfer, granted orally on September 19 and as set forth below.

### Facts

Gibbs is a construction engineering and consulting firm with its principal place of business in New York, and is responsible for providing the joint venture in dispute with design and engineering work which it performs from its Manhattan offices.

Harbert is a Delaware corporation with its principal place of business in Birmingham, Alabama. In addition to its responsibility for directing the efforts of the joint venture, Harbert is responsible for the procurement and construction work on behalf of the joint venture.

The parties formed the joint venture for the purpose of obtaining and entering into a contract with an owner for a project known as the Compressed Air Energy Storage Plant (the "Project") to be built in McIntosh, Alabama. The Project involves

the design and construction of a 110 mega-watt power plant with air driven turbines utilizing compressed air stored in an underground cavern.

In August 1988 the joint venture entered into an agreement with the owner to engineer and construct the Project for the lump sum price of $50,963,907. As of July 1990, change orders amounting to $1,859,024 were approved by the owner. As a result the current value of the contract is $52,-822,931. Gibbs has alleged that it had performed 97.0% of its work as of July 1990.

As of the end of July 1990, Harbert forecasted that there would be a loss on the Project of $6,263,852. The Project is currently almost two months behind schedule. Under the contract with the owner the joint venture may be liable for substantial consequential damages to the extent that the Project is delayed beyond its schedule March 31, 1991 completion date. Gibbs has overdue unpaid invoices to the joint venture, some as old as nine months.

During the course of the Project Gibbs was concerned that Harbert failed to meet its responsibility to manage the joint venture and filed a complaint in the Southern District for authorization of payment that Harbert has withheld for the invoices and alleging Harbert's mismanagement of the joint venture.

Harbert and Gibbs disagree about whether Gibbs is obligated to make additional contributions to the capital of the joint venture. On or about April 24, 1990 the Executive Committee of the joint venture met and at that time Harbert informed Gibbs that additional capital would be required. Harbert furnished an invoice and payment schedule to Gibbs thereafter and Gibbs has made no additional capital contributions nor has Gibbs referred the matter of the dispute over the capital call to arbitration. Gibbs has demanded that it be paid out of the joint venture's operating capital, and Harbert has refused to do so and ceased to make distributions to itself and to Gibbs.

After failing to extract additional payments and after refusing to make further capital contributions, Gibbs withheld from Harbert and the joint venture certain electrical, instrumentation, and control drawings, revised cable and raceway schedules, revised flow diagrams, and the line, valve and instrument lists prepared by Gibbs for the Project. These documents are needed to permit construction on the project to proceed. Among other things, Gibbs has refused to allow Harbert to review the documents or to obtain or copy them for their use on the project unless Harbert meets Gibbs' demand for payment. These documents were to be the subject of the deposition scheduled for September 18 and then stayed by Judge Propst pending the outcome of this motion at the hearing held on the 19th.

On the morning of August 28, 1990 Harbert telecopied a formal notice to Gibbs complaining of Gibbs' default under the Agreement and demanding that the default be cured by August 31, 1990. Within hours after receiving Harbert's notice, Gibbs filed this action in the Southern District of New York. Notwithstanding its dispute over its contractual obligation to arbitrate disputes with Harbert under Alabama law, Gibbs sought a declaratory judgment from this court that Gibbs is not in default of its joint venture obligations and damages for its unreimbursed invoices submitted to the joint venture as well as unliquidated damages from Harbert for its alleged mismanagement of the Project.

Three days following the filing of this action and without knowledge of its pendency, Harbert sued Gibbs in the Northern District of Alabama. Service was effected first in the Alabama Action, on August 31. The following Tuesday, September 4, process in this action was served on Harbert.

In the Alabama Action Harbert seeks a preliminary injunction pending arbitration as it contends that all of the present disputes are governed by the arbitration provision in the contract. Specifically, Harbert has requested the Alabama Court to order Gibbs to produce joint venture property, including the withheld drawings, without which the project cannot proceed. Harbert has also requested that Gibbs be enjoined from refusing to supply and make available such personnel as are required to

perform the contract with the Alabama Electric Cooperative. Finally, Harbert has requested the court to require Gibbs to submit any other disputes, including those enumerated in this action, to arbitration.

The Honorable Robert B. Propst had scheduled Harbert's request for a preliminary injunction for an evidentiary hearing on September 28, 1990.

## I. The Prior Pending Action Rule

■ The "prior pending action" rule followed in this Circuit provides generally that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second." *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (quoting prior Circuit decisions). However, "the practice of determining priorities between pending actions on the basis of dates of filing is a general rule, not to be applied in a mechanical way, regardless of other considerations." *Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F.Supp. 563, 568 (S.D. N.Y.1979), (citing *Hammett v. Warner Bros. Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir.1949)).

■ Considerations that have been found to render the rule inapplicable include those situations in which priority of filing was gained by winning a "race to the courthouse," as is frequently the case when the first-filed suit is a declaratory judgment action filed in anticipation of the later-filed action. *See e.g., Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Hartford Accident & Indem. Co. v. Hop-on Int'l Corp.*, 568 F.Supp. 1569, 1573 (S.D.N.Y. 1983); *Dow Jones & Co., Inc. v. Board of Trade*, 539 F.Supp. 190, 193 (S.D.N.Y.1982). Courts also pay little regard to the date of filing when the competing suits were commenced within days of each other. *See e.g., Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 532 (S.D.N.Y.1990) ("court minutes"); *Factors*, 579 F.2d at 217 (5 days); *Brierwood*, 479 F.Supp. at 569 (2

days); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 744 (S.D.N.Y. 1977) (6 days).

Gibbs filed this declaratory judgment action hours after receiving a formal notice of default of its joint venture obligations from Harbert. That notice contained a deadline of August 31, 1990. The declaratory relief Gibbs seeks from this court is a declaration that it is not in default of its joint venture obligations. The commencement of this suit appears to be triggered by Harbert's formal presentation of that very claim in the notice of default and the breakdown of communications between both sides. Moreover, jurisdiction over the party was not even obtained prior to the filing of the Alabama Action, wherein jurisdiction was acquired first. *See National Patent Dev. Corp. v. American Hosp. Supply Corp.*, 616 F.Supp. 114, 118 n. 7 (S.D.N.Y. 1984) (suggesting that status of "prior pending action" hinges on where jurisdiction first acquired). Given these circumstances, no weight will be accorded the "prior pending action" rule.

## II. Transfer Under § 1404 is Appropriate

■ The same factors that apply to a § 1404(a) motion to transfer are of significance in resolving a motion to stay a competing action. *National Patent Dev. Corp.*, 616 F.Supp. at 118–19. Those factors include the place wherever the operative facts occurred; the convenience of parties and witnesses; the principal places of business and operations of the parties to the action; the location of documents, the relative ease of access to the sources of proof, and the availability of process to compel attendance of unwilling witnesses; the plaintiff's choice of forum; a forum's familiarity with the governing law; trial efficiency and the interest of justice. *Id.* (citations omitted); *Don King Prods.*, 735 F.Supp. at 533. A balancing of these factors requires the transfer of this case to Alabama.

### A. The Location of Relevant Events and Convenience to Parties

Gibbs is located in New York City and the documents which Harbert seeks to com-

pel to be turned over are also located in New York City along with Gibbs' collection of Project documents and the personnel which Harbert seeks to compel Gibbs to make available.

Harbert's offices are located in Alabama and the joint venture was organized under Alabama law. The joint venture entered into the prime contract with the Alabama Electric Cooperative in Alabama and the project site is located in Alabama, albeit in a different district then where the Alabama Action is filed. Gibbs' principal allegation is that Harbert mismanaged the joint venture and virtually all of Harbert's activities in managing the joint venture have taken place in Alabama.

The convenience of the parties are evenly split but the operative facts under consideration—that the design work was to be performed in New York, and that the physical project, the home of the contract, the locus of the joint venture, and Harbert's management are all in Alabama tip decidedly in favor of transfer to Alabama.

### B. Convenience of Witnesses

The witnesses who will be called to refute Gibbs' allegations of mismanagement include numerous Alabama employees of the principal subcontractors and the owner of the Project, the Alabama Electric Cooperative. Of the thirteen principal subcontractors, seven are located in Alabama and four more are located in the nearby states of Georgia, Louisiana and Florida. The Alabama Electric Cooperative is located in Alabama, as are its employees and records. Although Gibbs' documents—including those sought to be compelled in the disputed scheduled depositions—are located in New York, the documents relating to the joint venture and the construction of the Project are maintained by Harbert, as the Sponsor, in Alabama.

One of the joint venture's principal subcontractors, Dresser Rand, is located in Allegheny County New York. Two other principal parties are in the Midwest. There are numerous other parties sprinkled all over the country.

The myriad locations of the witnesses do not favor either forum.

### C. Choice of Forum and Familiarity with Governing Law

As the Supreme Court recently reiterated, a diversity case should be tried in a "forum that is at home with the state law that must govern the case." *Ferens v. John Deere Co.,* —— U.S. ——, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The Second Circuit likewise has found choice of law provisions relevant for purposes of evaluating a § 1404(a) motion. *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 529 (2d Cir.1989) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964)).

The factor that most decidedly turns in favor of transferring this case to Alabama is the choice of Alabama law clause dictating that:

> All questions and disputes relative to the execution, validity, interpretation and performance of this Agreement shall be governed and construed in accordance with the law of the State of Alabama.

Although Gibbs disputes the applicability of the choice of law provision and suggests that Alabama state law may not be preempted by federal arbitration law, this decision itself will require a familiarity with Alabama law. The district court in Alabama is presumed to be more familiar with the law of that state than this court sitting in New York and accordingly, this factor weighs strongly in favor of Alabama as the most appropriate forum for the present dispute—irrespective of whether the provision ultimately applies.

### D. Trial Efficiency and the Interests of Justice

Although the average docket of the Alabama court is considerably less congested than the docket in this District this factor weighs little in the calculus given the availability of this court to proceed rapidly to hearing and decision of the disputes. The interests of justice also are not at issue.

Finally, there is no basis in this record to believe that impartial treatment is less available in either the Alabama or New York courts.

Conclusion

The balance of the relevant considerations indicates that Harbert has met its burden of demonstrating that the appropriate forum for this suit is in Alabama. Accordingly, the motion for the stay is denied and this case is transferred to the Honorable Robert B. Propst in the Northern District of Alabama.

It is so ordered.