GT PLUS, LIMITED trading as General Trading Company, a Hong Kong Corporation, Plaintiff,

v.

JA–RU, INC., a Florida Corporation, Defendant.

No. 97 CIV. 9481(RLC).

United States District Court,
S.D. New York.

Oct. 19, 1998.

Bryan Cave LLP, New York City (Stephen P. Gilbert, Philippe Bennett, Lara A. Holzman, Robin L. Kitzes, of Counsel), for plaintiff.

Loeb & Loeb LLP, New York City (David M. Satnick, Brian R. Socolow, of Counsel), for defendant.

Lewis Anten, P.C., Attorneys for Defendants, Encino, CA, Lewis Anten, Dorie Choderker, Amedeo Ferraro, of Counsel.

### OPINION

ROBERT L. CARTER, District Judge.

Defendant Ja–Ru, Inc. ("Ja–Ru") moves to dismiss or stay the complaint of plaintiff GT Plus Limited ("GT Plus") pending the outcome of another action between the same parties brought by Ja–Ru in the Middle District of Florida on November 13, 1997 (the "Florida action").[1] In the alternative, Ja–Ru moves to transfer the instant action (the "New York action") to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

Plaintiff GT Plus opposes Ja–Ru's motion to dismiss, stay, or transfer, and moves for partial summary judgment.

### I. Background

For many years, GT Plus, based in Hong Kong, and Ja–Ru, a Florida corporation with its principal place of business in Jacksonville, Florida, enjoyed an ongoing business relationship in the toy industry. GT Plus would arrange through its suppliers for the manufacture of various open market toys in Hong Kong, and ship these toys to Ja–Ru and Ja–Ru's customers in the United States. According to GT Plus, GT Plus would advance the money necessary to manufacture and package the toys for Ja–Ru, and once the toys were shipped, Ja–Ru would reimburse and pay GT Plus a commission. Pl.'s Brief at 3.

In early 1997, a dispute arose between the two companies which the parties were unable to resolve. On November 13, 1997, Ja–Ru filed suit in Florida accusing GT Plus of unfair competition under federal and Florida state law, trade dress infringement, and false designation of origin relating to GT Plus' alleged sale of water guns resembling Ja–Ru's merchandise. Ja–Ru also sought a declaratory judgment that it "does not owe Defendant GT Plus the amount claimed to be owed by Defendant GT Plus." Satnick Decl. Ex. A.

In addition to responding to Ja–Ru's Florida action, GT Plus filed its own action in New York on December 24, 1997, about six weeks after Ja–Ru initiated its Florida claim. GT Plus' New York complaint contains seven causes of action alleging breach of contract, conversion, goods sold and delivered, tortious interference with contractual relations, trade libel, unfair competition, and unjust enrichment. GT Plus maintains that Ja–Ru failed to pay for over $500,000 worth of products shipped between March, 1997 and May, 1997, and now moves for partial summary judgment on two of its claims: breach of contract and goods sold and delivered.

In the Florida action, GT Plus has twice moved to dismiss based on alleged jurisdictional infirmities, first on January 16, 1998 and subsequently on March 30, 1998. In response to GT Plus' first motion to dismiss, Ja–Ru filed an amended complaint on February 19, 1998, in which Ja–Ru addressed GT Plus' jurisdictional allegations and also revised its request for declaratory judgment. Ja–Ru's Florida action now seeks detailed declaratory judgments in six additional causes of action that trace the issues presented by GT Plus' New York complaint. On August 27, 1998, the Middle District of Florida refused to dismiss Ja–Ru's case.

Having described the procedural status of both the Florida and New York litigation, the court can now turn to Ja–Ru's motion of February 4, 1998, to dismiss, stay, or transfer the New York action.

### II. Discussion

#### A. Application of First–Filed Rule

It is well-settled in this circuit that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of a balance of convenience ... or ... special circumstances ... giving priority to the second." *First*

---

1. The Florida action is presently entitled Ja–Ru, Inc. V. GT Plus Ltd., Case Number 97– 1345–Civ–J–20B.

*City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (citations omitted). The first-filed rule "embodies considerations of judicial administration and conservation of resources," *Id.* at 80 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)), and generally applies where the two actions involve the same parties and embrace the same issues. *Donaldson, Lufkin, & Jenrette, Inc. v. Los Angeles County,* 542 F.Supp. 1317, 1320 (S.D.N.Y.1982) (Edelstein, J.) (applying first-filed rule where the second action "aris[es] out of the facts giving rise to the first-filed action").

GT Plus argues that Ja–Ru should not benefit from the first-file rule because the Florida action initially concerned alleged violations of Ja–Ru's intellectual property rights, and Ja–Ru's original request for declaratory judgment made merely oblique reference to the contractual dispute that is the subject of GT Plus' New York action.

■ Ja–Ru's amended complaint diffuses GT Plus' argument. This circuit applies the first-filed rule in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district. *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 424 (2d Cir.1965), *cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *c.f. Employees Sav. Plan of Mobil Oil Corp. v. Vickery,* 99 F.R.D. 138 (S.D.N.Y.1983) (Edelstein, J.) (finding that it is within the district court's discretion to decide whether an amended complaint relates back to the filing date of the original complaint for the purposes of the first-filed rule). It is immaterial that the contractual dispute was not fully spelled out in Ja–Ru's original Florida complaint; Ja–Ru's suit "was the first suit which made possible the presentation of all the issues and

which, by amendment of the complaint did raise all the substantial issues between the parties." *Mattel, Inc.,* 353 F.2d at 424. By virtue of Ja–Ru's amended complaint, the issues in the New York action are no different than the issues in the Florida action, only fewer in number, and first-filed analysis is appropriate.[2]

■ The court must still determine whether the balance of convenience or special circumstances militate against giving precedence to the first-filed Florida action, since a court need not proceed by mechanical reference to filing dates. *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994) (Leisure, J.) ("district courts need not slavishly adhere to the first-filed rule"); *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990) (Sweet, J.). However, the party asserting exceptions to the first-filed rule bears the burden to show that equitable considerations recommend the later action, *Hanson PLC v. Metro–Goldwyn–Mayer Inc.,* 932 F.Supp. 104, 106 (S.D.N.Y.1996) (Chin, J.), and must overcome the "strong presumption in favor of the forum of the first-filed suit." *800–Flowers,* 860 F.Supp. at 131.

### B. Balance of Convenience

■ "Balancing factors of convenience is essentially an equitable task." *First City National Bank,* 878 F.2d at 80. Important considerations include the same ones that apply to a § 1404(a) motion to transfer venue. *J Lyons & Co. Ltd. v. Republic of Tea. Inc.,* 892 F.Supp. 486 (S.D.N.Y.1995) (Scheindlin, J.); *Gibbs,* 745 F.Supp. at 996. These are: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of pro-

---

**2.** The first-filed rule can be triggered even when the competing claims do not present the exact same issues. *Manufacturers Hanover Trust Co. v. Palmer Corp.,* 798 F.Supp. 161 (S.D.N.Y.1992) (Haight, J.) ("The interests of justice require that the cases be related, not identical"). Here it is enough to note that Ja–Ru's action includes all the legal claims in dispute.

cess to compel attendance of unwilling witness; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *800–Flowers,* 860 F.Supp. at 133 (collecting cases).

█ These factors tip decisively in favor of Florida as the most convenient forum. Florida is the principal place of business for Ja–Ru, the state where Ja–Ru received the products sent from Hong Kong by GT Plus, the locale for Ja–Ru's business records, and, according to Ja–Ru, the most convenient location for its witnesses to appear. By contrast, GT Plus does not specify any witnesses or documents that will be from New York, nor does GT Plus describe a significant connection of its own to New York. The transactions that are the subject of litigation took place either in Florida or between Florida and Hong Kong; New York, on the other hand, is not the locus for any operative facts.

The Middle District of Florida recently denied GT Plus' jurisdictional challenge in the Florida action and there should be no special concerns regarding service of process in that forum. Although plaintiff GT Plus chose New York as the forum for the instant action, "[t]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *800–Flowers,* 860 F.Supp. at 135. Moreover, "since this court applies these factors in reference to the first-filed rule, and not merely a transfer, there is a strong presumption in favor of the forum chosen by the original plaintiff, [Ja–Ru]." *Id.*

Trial efficiency and the interests of justice also favor Florida. Rather than allow two parallel suits to go forward, it is more appropriate for one court to adjudicate the claims "in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Id.* at 136 (quoting *Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968)). In this instance, the balance of convenience, far from weighing against the first-filed rule, supports its application.

### C. Special Circumstances

█ GT Plus also claims that special circumstances warrant a departure from the first-filed rule. Two such circumstances alleged by GT Plus derive from the timing of Ja–Ru's suit. On November 6, 1997, GT Plus mailed a letter to Ja–Ru that demanded payment of Ja–Ru's alleged outstanding debt, indicating that if GT Plus did not receive payment within seven days, it "may have to commence legal proceedings." Au Del. ¶ 6, Ex. 1. On November 13, 1997, Ja–Ru filed the Florida action. According to GT Plus, when Ja–Ru brought suit within the seven day period it (1) engaged in forum shopping and (2) improperly anticipated GT Plus' own legal action.

█ Forum shopping by a plaintiff is perhaps the most significant special circumstance that will deny priority to a first-filed suit. *Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y. 1996) (Sweet, J.). "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated his choice." *Id.* (citation omitted).

Although Ja–Ru's timing does suggest that it was partly motivated to file because GT Plus intimated potential legal action, GT Plus must demonstrate that Ja–Ru's filing was motivated "solely or largely" by forum shopping. *Id.* (finding that partial motivation does not constitute impermissible forum shopping). This GT Plus fails to do. As the discussion regarding the balance of convenience illustrated, there is a

substantial connection between the Florida forum and the factual circumstances of the litigation, suggesting that forum shopping was not the primary impetus for Ja–Ru's suit. *See Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) (Goettel, J.) (rejecting allegation of forum shopping where suit had "more than a slight connection" to chosen forum).

 A separate special circumstance, alleged here by GT Plus, can exist where the plaintiff in the first action has rushed to file for a declaratory judgment after receiving notice of a forthcoming lawsuit. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978); *Dow Jones & Co., Inc. v. Board of Trade of City of Chicago*, 539 F.Supp. 190 (S.D.N.Y.1982) (Carter, J.); *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144 (S.D.N.Y. 1995) (Baer, J.). Such an "anticipatory filing" can be one factor weighing against first-filed priority even where there is no specific finding of forum shopping. *See Factors*, 579 F.2d at 219 ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiff's chosen forum") (citation omitted). A court will generally suspect an anticipatory filing if the communicated notice explicitly mentions a lawsuit, a tentative filing date, or a forum. *Employers Ins. of Wausau v. Prudential Ins. Co. Of America*, 763 F.Supp. 46, 49 (S.D.N.Y.1991) (Patterson, J.). However, even when a plaintiff files in anticipation of the other party bringing suit elsewhere, the plaintiff does not necessarily act improperly "where the [plaintiff] was genuinely concerned with obtaining a benefit beyond the scope of what the other party could be expected to bring suit for." *Ontel Products, Inc.*, 899 F.Supp. at 1151.

 GT Plus' letter of November 6, 1997 does not designate an actual filing date nor a forum, but it does specify a final period after which litigation could follow.

This might be the type of notice to suggest an anticipatory filing, absent other considerations. The Florida action, however, involves claims by Ja–Ru concerning its intellectual property rights in addition to the alleged debt referred to by GT Plus' letter. The Florida action is therefore "genuinely concerned with obtaining a benefit beyond the scope" of what GT Plus' letter referenced as the substance for potential litigation. *Id.* Given that, Ja–Ru's timing is not enough to deny precedence to the first-filed Florida action.

GT Plus alleges other special circumstances, including a minimal difference in time between the filing of the two actions, an interruption of settlement negotiations, a lack of progress in the Florida litigation, and judicial economy.

 The date of filing is less important when competing actions are filed within a short period of time. *See, e.g., Factors*, 579 F.2d at 217 (discounting five-day interval between filings); *Hanson PLC*, 932 F.Supp. at 107 (three days between filings); *Riviera Trading Corp.*, 944 F.Supp. at 1159 (four days between filings); *Capitol Records, Inc.*, 810 F.Supp. at 1354 (twenty days between filings). Here, forty-one days elapsed between the filing of the Florida action and the filing of the New York action. This six-week timespan is more than negligible, and weighs in favor of applying the first-filed rule.

 The policy of promoting amicable settlements sometimes militates for a second-filed action, particularly where the first party to file has prematurely cut off negotiations or preempted them entirely with a lawsuit. *See Hanson PLC*, 932 F.Supp. at 108 (disregarding first-filed rule where filing party lulled other side into waiting for promised settlement negotiations); *Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522 (S.D.N.Y.1990) (Sweet, J.) (finding special circumstances where plaintiff promised to answer settlement offer but filed suit instead). By the time of Ja–Ru's suit, the parties had com-

municated for several months without resolving their dispute. The Florida action did not cut off a promising dialogue, nor did Ja–Ru falsely imply that it would refrain from litigation. Therefore, giving the Florida action precedence does not contravene court support for amicable settlements.

■ It also best serves judicial economy to prioritize the Florida action. Neither of the competing actions has progressed very far. Discovery in the New York action has been stayed at its initial stages by order of Magistrate Judge Buchwald pending the outcome of Ja–Ru's instant motion to dismiss, stay, or transfer.[3] To allow the dispute between GT Plus and Ja–Ru to proceed in both Florida and New York would contradict "considerations of judicial administration and conservation of resources" that underlie the first-filed rule of this court. *First City,* 878 F.2d at 80.

■ Accordingly, the Middle District of Florida, not this court, is the proper court to decide GT Plus' motion for partial summary judgment on the issues of breach of contract and goods sold and delivered. Under 28 U.S.C. § 1404(a), it is within the discretion of the court to transfer a civil action "[f]or the convenience of the parties, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1993). As noted, the same factors that apply in considering the balance of convenience apply to § 1404(a). The above discussion demonstrates that those factors overwhelmingly favor the Florida forum, and that the New York action, which embraces the same issues as the Florida action, could have been brought in that forum.

3. Magistrate Judge Buchwald ruled that it would be inefficient to limit discovery to one part of the total dispute between the parties, as GT Plus seemed to have desired. Instead,

### III. Conclusion

For the reasons stated above, Ja–Ru's motion to transfer this action to the Middle District of Florida is granted, with GT Plus' motion for partial summary judgment to be taken up in that forum.

IT IS SO ORDERED.

Magistrate Judge Buchwald stayed all proceedings in the New York action pending the outcome of the instant motion.